(657 P.2d 589)
No. 53,695

PURITAN-BENNETT CORPORATION and PURITAN-BENNETT AERO SYSTEMS CO., *Appellants,* v. ROBERT J. RICHTER, *Appellee.*

Opinion filed January 20, 1983.

*Rolland Exon* and *Thomas E. Ruzicka,* of Gardner, Davis, Kreamer, Norton, Hubbard & Ruzicka, of Olathe; *James Borthwick* and *John K. Brungardt,* of Blackwell, Sanders, Matheny, Weary & Lombardi, of Kansas City, Missouri, for the appellants.

*Mark R. Singer,* of Romain, Burger & Singer, of Overland Park, and *Irving Achtenberg,* of Achtenberg, Achtenberg & Belzer, P.C., of Kansas City, Missouri, for the appellee.

Before SPENCER, P.J., PARKS, J. and HARRY G. MILLER, District Judge Retired, assigned.

PARKS, J.: Plaintiffs, Puritan-Bennett Corp. and Puritan-Bennett Aero Systems Co., brought this action for injunctive relief against their former employee, Robert Richter, seeking enforcement of restrictive covenants in defendant's employment contract. The trial court held that the contract not to compete was unenforceable for a lack of consideration but issued a permanent injunction premised on common law against disclosure of trade secrets. Plaintiffs appeal the court's refusal to enforce the contract and the scope of the injunction against disclosure.

Defendant Richter was first offered employment with plaintiffs on October 29, 1973. The oral offer was confirmed in writing the following day and subsequently accepted by defendant in a letter dated November 2. In reliance upon the validity of the contract of employment, defendant sold his house and terminated his job in Wisconsin, purchased a residence in the metropolitan Kansas City area, enrolled his son in school, and established residence locally, all prior to December 17, 1973.

On December 17, defendant reported to work and was asked during the day to fill out and sign some routine employment and insurance forms in the personnel office. At that time defendant was also asked to sign a document entitled "Hiring Agreement" which contains the covenants plaintiffs now seek to enforce.

Upon inquiry, Richter was told by an employee in the personnel office that execution of the agreement was a condition of employment but no management officials of the company ever advised Richter that his employment was so conditioned. Defendant signed the contract.

Richter was initially employed as project engineer in a division of plaintiffs' business principally involved in the development, manufacture and sale of emergency oxygen breathing equipment in aircraft. Defendant's employment was terminable at will but he remained with the company for over seven years and was quite successful in his work, receiving various promotions and job title changes. At the time of his resignation on March 20, 1981, he was director of engineering. Shortly after resigning, Richter notified plaintiffs that he had accepted a position with Scott Aviation, plaintiffs' principal competitor in the narrow field of aircraft emergency oxygen equipment. Plaintiffs sought a preliminary injunction to prohibit defendant's employment by Scott and although that relief was denied, the court did enjoin defendant from disclosing trade secrets of the plaintiffs. After a hearing on the merits of plaintiffs' request for permanent injunction, the court held that the scope of the anti-competition clauses of the "Hiring Agreement" was reasonable and not inimical to the public policy of this state but that the agreement was not supported by sufficient consideration to be enforceable. The court also held that plaintiffs had a protectable interest at common law in preventing the disclosure of their trade secrets or confidential information but that this interest could not prevent employment of a former employee by a competitor. The court entered an injunction prohibiting defendant from "disclosing or discussing any aspect of [substituted plaintiffs'] business which pertains to plaintiffs' research, development, production or sales technique of gaseous and chemical aircraft emergency oxygen equipment."

The provisions of the hiring agreement which plaintiffs sought to enforce stated as follows:

"4.   That in addition to my acquaintance with the various aspects of any of the aforesaid items of commercial property of the Company, my activities in its employ may give me information about similar activities of others within the Company as well as with confidential information, data, records, practices and other trade secrets of it, exemplified by, but not restricted to, compositions, details of methods of preparation, varied uses and methods of

application, of its products, its customers, their specifications, and uses and methods of application, and formulations made, of products bought from the Company; all of which are hereinafter referred to as its 'trade secrets'.

"5. Not to disclose to others during my employment or at any time thereafter except as the Company may authorize in writing or a Court order may require, any information concerned with any of the Company's aforesaid commercial property or trade secrets, or any information connected with any aspect of the Company's business; and that this restriction against disclosure similarly applies to prevent me from submitting for publication in any scientific, trade, or other journal any such aforesaid information as any part or the whole of any item or article submitted for publication therein, without written approval of one duly authorized by the Company to so approve.

. . . .

"9. I will not render services directly, or indirectly, to any organization competitive with the conduct of the business of the Company, for a period of one year after termination with the Company."

Antidisclosure and anticompetition covenants ancillary to a contract of employment freely entered into with full knowledge, are valid and enforceable if the restraint contained therein is reasonable under the facts and circumstances of the particular case. *Eastern Distributing Co., Inc. v. Flynn*, 222 Kan. 666, 670, 567 P.2d 1371 (1977). The trial court found the covenant in this case to be reasonable and that point is not disputed on appeal. However, the court held that there was no consideration supporting the enforceability of the hiring agreement, reasoning that the consideration for the original employment contract was independent of the "Hiring Agreement" while Richter's continued employment following execution of the agreement was insufficient to support the agreement.

All contracts to be enforceable must be supported by consideration. *Dugan v. First Nat'l Bank in Wichita*, 227 Kan. 201, 211, 606 P.2d 1009 (1980). There was ample evidence to support the trial court's conclusion that Richter and Puritan-Bennett did not agree to the covenant not to compete as part of the original contract of employment. Richter's job had been offered and accepted in writing six weeks before he ever saw or knew about the covenant not to compete. The salary was agreed to and the company paid the Richters' expenses for a house-hunting trip to the area. In reliance on the contract, Richter sold his house in Wisconsin, moved his family to Kansas City, bought a new house and enrolled his son in school. Only after reporting for work was he asked to sign the covenant not to compete. The written hiring

agreement provided no new benefits to Richter other than those accruing to all employees and thus did not supplement or define the original agreement. Finally, the hiring agreement cannot be viewed as the completion of an incomplete contract since there was no evidence the contract was incomplete or that the parties left terms open for later resolution. In sum, there was abundant support for the trial court's view of the hiring agreement as separate and independent of the original contract of employment. Thus, the consideration needed to support the enforceability of the agreement containing the covenants of nondisclosure and noncompetition would have to consist of some burden or benefit outside the original contract to hire. Plaintiffs contend that this element was supplied by their continued employment of Richter for seven years after the agreement was executed because his employment was terminable at will.

Whether continued employment is adequate consideration to support the imposition of a restrictive covenant not to compete contained in a written contract for an indefinite term of employment when the initial contract contained no restrictive covenant and was terminable at will is a question of considerable disagreement. The authorities are split on the issue (See Annot., 51 A.L.R.3d 825) although most states hold that continued employment may be adequate consideration under certain circumstances. For example, if immediate termination would follow refusal to sign a covenant not to compete (*Matlock v. Data Processing Sec., Inc.*, 607 S.W.2d 946 [Tex. Civ. App. 1980], *aff'd as modified* 618 S.W.2d 327 [Tex. 1981]), or the employee has enjoyed a significant length of service and substantial benefits after signing the covenant (*Davies & Davies Agcy., Inc. v. Davies*, 298 N.W.2d 127 [Minn. 1980]), continued employment has been held to be sufficient consideration to support a restrictive covenant executed after the initial employment contract began. Other states have held continued employment to be inadequate consideration as a matter of law when it is unaccompanied by a beneficial change in the employee's status at the time the covenant is executed (*Maintenance Specialties, Inc. v. Gottus*, 455 Pa. 327, 314 A.2d 279 [1974]), or when it appears that the covenant not to compete was not a freely bargained for term or condition of employment. (*PEMCO Corp. v. Rose,* _____ W.Va. _____, 257 S.E.2d 885, 890 [1979]).

After reviewing these authorities, we hold that continued employment should not as a matter of law be disregarded as consideration sufficient to uphold a covenant not to compete. Ordinarily, the presence of a benefit or detriment to a promisor, sufficient to constitute consideration, is a question of fact, as is the question of what constitutes consideration when that issue is controverted. *Evco Distributing, Inc. v. Brandau,* 6 Kan. App. 2d 53, 59, 626 P.2d 1192, *rev. denied* 230 Kan. 817 (1981). Without doubt, employers rely upon the continued loyalty of an employee as signified by his signature on a covenant not to compete in dispensing responsibility and rewards. Thus, an employee who has been retained, promoted and entrusted with company secrets for a significant time after execution of such a covenant has received a benefit to which he was not automatically entitled. The particular facts of this case were not controverted. Defendant was given consistent promotions, increased responsibilities and greater importance in company operations after signing the covenant not to compete. Moreover, he had been advised that his continued employment was conditioned upon execution of the hiring agreement when he signed it. We hold that the trial court erred in holding that Richter's continued employment after execution of the agreement was insufficient consideration to support the restrictive covenants and conclude that the contract should have been enforced.

Defendant has argued that even were we to conclude that the hiring agreement was enforceable, the issue of enforceability is moot because the one-year term of the covenant not to compete has since run. We disagree. An appeal will not be dismissed as moot unless it clearly and convincingly appears the actual controversy has ceased and the only judgment which could be entered would be ineffectual for any purpose and an idle act insofar as rights involved in the action are concerned. *Reeves v. Board of Johnson County Comm'rs,* 226 Kan. 397, 405, 602 P.2d 93 (1979). An action to enforce a restrictive covenant lies within the equitable jurisdiction of the court. A district court sitting in equity may devise a remedy which extends or exceeds the terms of a prior agreement between the parties if it is necessary to make the injured parties whole. *Levitt Corp. v. Levitt,* 593 F.2d 463, 469 (2nd Cir. 1979). Thus, if an agreement is unreasonable in scope but otherwise enforceable, the court may alter its terms

to shape a remedy which affords the plaintiff the contemplated protection. *Eastern Distributing Co., Inc. v. Flynn*, 222 Kan. at 675. Likewise, the protective purpose of an agreement which is undoubtedly reasonable but incorrectly denied enforcement by the trial court should be carried out as much as possible on remand. For example, in *American Eutectic Weld. Alloys Sales Co., Inc. v. Rodriguez*, 480 F.2d 223, 229 (1st Cir. 1973), the First Circuit reversed the district court's denial of a preliminary injunction to prohibit plaintiff's former employee from working for a competing firm in contravention of his covenant not to compete, and remanded with directions for the district court to determine whether relief beyond the terms specified in the agreement was necessary. Accord, *Premier Industrial Corp. v. Texas Industrial Fastener Co.*, 450 F.2d 444, 448 (5th Cir. 1971) (court ordered injunction against competition to extend to one year from date district court entered judgment). In sum, since we have held that the contract in question should have been enforced, the question remains whether plaintiff is entitled in equity to an extension of the term of noncompetition. Thus, this case is not moot but must be remanded to district court.

Further underscoring the need for remand is plaintiffs' complaint concerning the scope of the injunction entered by the court. Based on the common law interest in trade secrets (*Koch Engineering Co. v. Faulconer*, 227 Kan. 813, 610 P.2d 1094 [1980]), the court issued a general nondisclosure injunction against defendant. However, the hiring agreement also contained provisions against disclosure and these provisions were not limited in time. Thus, because we have now held the hiring agreement enforceable, the district court must consider whether broader injunctive relief against disclosure is compelled by the terms of the contract.

The judgment of the district court is reversed and the cause remanded for consideration of what, if any, further relief is required consistent with this opinion.