(845 P.2d 703)

No. 63,415 ∎

KATHI CRAWFORD, d/b/a CREATIVE MARKETING SERVICES, DEM-
ONSTRATIONS UNLIMITED, and DEMONSTRATIONS UNLIMITED,
INC., *Appellant*, v. STATE OF KANSAS, DEPARTMENT OF HUMAN
RESOURCES, *Appellee*.

Opin-
ion filed December 15, 1989.

*John A. Vetter*, of Hershberger, Patterson, Jones & Roth, of Wichita, for
appellant.

*Jo Ann VanMeter*, of Kansas Department of Human Resources, for
appellee.

Before DAVIS, P.J., RULON and GERNON, JJ.

GERNON, J.: Kathi Crawford appeals from the district court
decision upholding the assessment of unemployment contributions
against her businesses. Crawford is in the business of supplying
demonstrators for stores. Demonstrators are people who appear

at stores or events to promote food or to show how appliances or products work.

In 1986 and 1987, the Kansas Department of Human Resources investigated Crawford's business and determined that the business was subject to state unemployment tax because the people who worked as demonstrators were employees and not independent contractors. An administrative law judge found that the demonstrators were employees and that the assessment of unemployment contributions was proper. The decision was affirmed by the Secretary of the Kansas Department of Human Resources.

Crawford filed a petition for judicial review. The district court found that two of the findings of the administrative law judge were not supported by substantial competent evidence, but that the Secretary's decision was supported by the facts and did not erroneously interpret or apply the law. Crawford appeals from this ruling.

We reverse and remand.

## SCOPE OF REVIEW

The first issue to be considered is whether the trial court applied the proper standard of review when making its decision.

Judicial review of orders of an administrative body is governed by the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* The scope of review is stated in K.S.A. 77-621. The agency's findings are presumed valid on review and the agency's order may only be set aside by the district court if it is not supported by substantial competent evidence, is without foundation in fact, or is otherwise unreasonable, arbitrary, or capricious. See *Zinke & Trumbo, Ltd. v. Kansas Corporation Comm'n,* 242 Kan. 470, 474-75, 749 P.2d 21 (1988).

Judicial review is limited to these questions of law. K.S.A. 77-621 does not limit a court's review of an agency's interpretation or application of a matter of law. In reviewing a question of law, a court may substitute its judgment for that of the agency. *National Gypsum Co. v. Kansas Employment Security Board of Review,* 244 Kan. 678, 682, 772 P.2d 786 (1989).

The record discloses that the district court was unsure of its scope of review in its discussion of this issue with the parties.

The finding by the court that it was not authorized to make an independent analysis of the law is incorrect.

However, it appears that the court did engage in the proper scope of review when it considered the case. The court discounted several findings as not being supported by the evidence and then stated that, while some of the other factual findings were contested, there was a basis in the record to support them and they should not be disturbed. The court also found that the law had been applied and interpreted correctly. The court's overall ruling was that the facts and the law supported the decision made by the Department of Human Resources.

## EMPLOYEES VS. INDEPENDENT CONTRACTORS

The other issue to be decided on appeal is whether the court erred in ruling that the demonstrators were employees and not independent contractors.

The district court upheld the determination made by the Department of Human Resources that the demonstrators provided by Kathi Crawford's businesses were employees subject to the Kansas Employment Security Act, K.S.A. 44-701 *et seq.*

K.S.A. 44-703(i)(3)(D) provides:

"Services performed by an individual for wages or under any contract of hire shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the secretary that: (i) such individual has been and will continue to be free from control or direction over the performance of such services, both under the individual's contract of hire and in fact; and (ii) such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed."

There is no absolute rule for determining whether an individual is an independent contractor or an employee. The facts and circumstances in each case determine the status of the individual. *Wallis v. Secretary of Kans. Dept. of Human Resources*, 236 Kan. 97, 102, 689 P.2d 787 (1984).

An independent contractor is generally described as one who contracts to do certain work according to his own methods and is not subject to the control of his employer except as to the results or product of his work. 236 Kan. at 102.

An employer's right to direct and control the method and manner of doing the work is the most significant aspect of the employer-employee relationship, although it is not the only factor entitled to consideration. An employer's right to discharge the worker, payment by the hour rather than by the job, and the furnishing of equipment by the employer are also indicia of an employer-employee relationship. *McCarty v. Great Bend Board of Education,* 195 Kan. 310, 311-12, 403 P.2d 956 (1965).

It is the right of the employer to control the manner of the work that is significant, not the actual interference or exercise of control by the employer. *Read v. Warkentin, Commissioner,* 185 Kan. 286, 293, 341 P.2d 980 (1959).

Both parties refer to twenty factors considered by the Department of Human Resources when a decision is made as to whether an employer-employee relationship exists. These factors are listed below:

(1) The existence of the right of the employer to require compliance with instructions;

(2) the extent of any training provided by the employer;

(3) the degree of integration of the worker's services into the business of the employer;

(4) the requirement that the services be provided personally by the worker;

(5) the existence of hiring, supervision, and paying of assistants by the workers;

(6) the existence of a continuing relationship between the worker and the employer;

(7) the degree of establishment of set work hours;

(8) the requirement of full-time work;

(9) the degree of performance of work on the employer's premises;

(10) the degree to which the employer sets the order and sequence of work;

(11) the necessity of oral or written reports;

(12) whether payment is by the hour, day, or job;

(13) the extent to which the employer pays business or travel expenses of the worker;

(14) the degree to which the employer furnishes tools, equipment, and material;

(15) the incurrence of significant investment by the worker;

(16) the ability of the worker to incur a profit or loss;

(17) whether the worker can work for more than one firm at a time;

(18) whether the services of the worker are made available to the general public;

(19) whether the employer has the right to discharge the worker; and

(20) whether the employer has the right to terminate the worker.

The administrative law judge found that Crawford's demonstrators were employees because Crawford exercised control by requiring compliance with a dress code and the completion of recap sheets, and because she had the right to terminate a demonstrator for cause.

The district court reversed the finding that a dress code existed, but stated that the demonstrators were told to dress appropriately. The court also reversed the finding that instructions were given to the demonstrators in a booklet. The district court did conclude that the Secretary's decision to accept the recommendation of the administrative law judge was correct.

We conclude that the court's conclusion that the people associated with Crawford were employees is not supported by substantial competent evidence, either under the general employer's right-to-control test or under the twenty specific considerations of the Department of Human Resources.

An individual free from control or direction over the performance of his services is not covered under the Kansas Employment Security Act. Instructions and directions concerning the demonstrations came from the manufacturers of the products and the stores in which the demonstrations took place. Crawford merely transmitted the instructions to the workers by mail or by phone. She had no part in formulating the instructions and did not check on the workers or supervise them during the demonstrations. The demonstrators were not entirely free with respect to how they did their demonstrations, but the restrictions came not from Crawford but from the manufacturers or the individual stores themselves.

The *McCarty* case listed other relevant aspects of an employer-employee relationship besides the right to control the method and manner of work. Payment of the demonstrators was clearly by the job and not by the hour. Crawford also did not supply any equipment to the demonstrators. These two factors are indicia of an independent contractor relationship. To be sure, the right to terminate issue is not as clear. But, Crawford was free to contact a worker again, or to not do so, and workers were also free to turn down offers of future jobs for any reason. The record further discloses that many worked as demonstrators for other companies.

Of the 20 factors discussed by the parties, many were inapplicable to this situation or inconclusive. At least nine factors plainly supported Crawford's independent contractor argument. No training was provided by her. She did not set the order or sequence of work, nor did she require that services be provided personally by the demonstrators. There was no work done on Crawford's premises. Payment was by the job, and business and travel expenses were not paid. No tools, equipment, or materials were furnished by Crawford, and demonstrators could and did work for more than one demonstrating company. Oral or written reports were not necessary, although a time recap sheet was a requirement of one of the stores. The sole use of the recap sheet to Crawford was to verify who had done the demonstration for purposes of payment. Any set work hours were established by the store and not by Crawford.

One of the factors to be considered is that of a continuing relationship. The Department of Human Resources argues that this is satisfied because some workers do demonstration work repeatedly through Crawford. However, Crawford insists that acceptance of each new job offer is a voluntary decision made by the worker and that the relationship between her and the workers is more similar to a person returning to a dentist or doctor he or she likes than to a continuous employment relationship. We conclude that Crawford's contention has merit. There is no duty owed by Crawford or the worker to each other between jobs, and there is no expectation that further jobs will be offered or accepted. When more demonstrations are arranged, it is done on a job-by-job basis.

A similar situation was considered in *Jean M. Light Interviewing Services, Inc. v. State*, 254 So. 2d 411 (Fla. 1971). In *Light*, interviewers for marketing firms were free to refuse jobs that arose without endangering the possibility of being offered work in the future by the company. They were also able to work for other interviewing firms or to have other employment. There was no requirement that they accept a job, and also no requirement that they be offered available jobs. The court in *Light* found there to be no continuity in the relationship between the interviewers and the firm. 254 So. 2d at 413. These circumstances are analogous to those in the present case.

In summary, most of the 20 factors either weigh against finding an employee-employer relationship or are inconclusive. We conclude that the factors that do exist do not establish a sufficient basis for concluding that there is an employer-employee relationship between Crawford and the demonstrators.

The fundamental question is whether the right to control exists. Any control Crawford had would have had to arise from her being able to enforce the requirements and instructions of the manufacturers or stores, because she herself did not establish any conditions or directions relating to the manner of doing the work. The Department and the district court pointed to three factors as signs of control — the right to terminate, the statement about appropriate dress, and the necessity that recap forms be filled out. However, the recap forms were merely a way of tracking the person who worked and the days worked. The appropriate dress statement was a general instruction not to wear blue jeans and to dress appropriately. The conclusion that we have drawn is that these factors do not show any control over the *manner* and *method* of the demonstration itself.

The evidence indicates that Crawford was concerned only that a demonstration be done when requested. She did not appear to have had much knowledge of the specific products demonstrated or of the manufacturers' instructions, nor did she supervise, direct, or control the workers doing the demonstrations. Therefore, substantial evidence does not exist to support the finding that the demonstrators were employees of Crawford.

Reversed and remanded.