No. 117,584

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JAMES COLBORN REVOCABLE TRUST;
CATHERINE COLBORN REVOCABLE TRUST;
and DOROTHY JO CHAPIN,
*Appellees*,

v.

HUMMON CORPORATION,
*Appellant*.

SYLLABUS BY THE COURT

1.

To be enforceable, a contract must be supported by consideration. The consideration necessary to establish a valid contract, express or implied-in-fact, must be an act, a forbearance, or a return promise, bargained for and given in exchange for the promise.

2.

Where one in good faith asserts a claim not obviously invalid, worthless, or frivolous, and which might be thought to be reasonably doubtful, the forbearance to prosecute such a claim will furnish a sufficient consideration for a promise of settlement and compromise of such claim.

3.

When a contract is reduced to writing and signed by the parties, the existence of consideration is presumed. In such cases, lack of consideration is an affirmative defense that must be proved by substantial competent evidence.

1

4.

When a contract includes a condition precedent, the contract, even though executed and delivered by the parties, cannot be enforced without the performance of that condition precedent. A condition precedent requires the performance of some act or the happening of some event after the terms of the contract, including the condition precedent, have been agreed on before the contract shall take effect.

5.

Whether contractual performance is based on a condition precedent is a question of fact.

6.

Generally, issues not raised before the district court cannot be raised on appeal. One exception to that general rule is when consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights. This exception is not met when a party fails to explain which fundamental right would be denied if this court did not consider the newly raised issue.

7.

A contract is unenforceable due to vagueness if the intent of the parties cannot be ascertained.

8.

Because a settlement agreement is a contract, the parties must agree on all material terms. Once that is done, any nonmaterial discrepancies can be resolved by the court consistent with the parties' intent when they agreed upon the material terms.

9.

A material term is a contractual provision dealing with a significant issue such as subject matter, price, payment, quantity, quality, duration, or the work to be done.

10.

The interpretation of a written instrument is a question of law subject to unlimited appellate review.

11.

The primary rule in interpreting written contracts is to ascertain the intent of the parties. If the terms of the contract are clear, there is no room for rules of construction, and the intent of the parties is determined from the contract itself.

12.

When determining whether a settlement agreement has been formed, we remember the key principle that the law favors settlement of disputes.

13.

Where a contract specifies that access is for a specific purpose, we apply the principle of statutory construction *expressio unius est exclusio alterius*, meaning that the mention or inclusion of one thing implies the exclusion of another. We cannot reasonably construe that language to mean, instead, that the parties intended for the stated purpose to be merely one among others, as if the language had stated "for purposes including but not limited to . . . ."

Appeal from Barber District Court; FRANCIS E. MEISENHEIMER, judge. Opinion filed December 8, 2017. Affirmed.

*Thomas M. Rhoads*, of Law Offices of Thomas M. Rhoads LC, of Wichita, for appellant.

*Josh V.C. Nicolay*, of Stull, Beverlin, Nicolay & Haas, LLC, of Pratt, for appellee.

Before GARDNER, P.J., GREEN, J., and MERYL D. WILSON, District Judge, assigned.

GARDNER, J.: This appeal challenges the district court's determinations of the enforceability and scope of a mediation agreement entered into by the parties. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1984, the Hummon Corporation (Hummon) leased a saltwater disposal well located in Barber County, Kansas. The James D. Colborn Revocable Trust, the Catherine Colborn Revocable Trust, and Dorothy Jo Chapin (Landowners) owned a two-thirds interest in the land on which the well was located. In 2015, the Landowners filed a lawsuit against Hummon alleging that Hummon was a holdover tenant because Hummon continued operating the well after the lease expired. The Landowners claimed Hummon had failed to pay for its use of the well from 2009 through 2014 and sought $62,986.50 from Hummon. Hummon admitted that it owed the Landowners some compensation for using the well but contested the amount due.

During pretrial proceedings, Hummon and the Landowners agreed to mediate the dispute. Hummon and the Landowners signed a mediation agreement that required the Landowners to convey an easement and assign any interest they had in an abandoned pipeline to Hummon. In exchange, Hummon agreed to pay the Landowners $42,500 and to remove equipment associated with the well. That agreement provided in important part that the Landowners agreed to assign Hummon any interest owned in the Atlas steel pipeline located on described sections of land and to assign/grant an easement for Hummon to access the Atlas pipeline "for purposes of producing gas from the Chapin-Smith field."

4

After mediation, Hummon and the Landowners disagreed on the scope of the pipeline easement. The Landowners then filed a motion to enforce the mediation agreement with the district court. After a hearing, the district court held that the written mediation agreement was sufficiently specific, that the agreement was enforceable, and that the agreement was supported by consideration. The district court found that Hummon had an implied right to do whatever was "reasonably necessary" to operate the Atlas pipeline in a safe manner. However, the district court determined that Hummon could use that abandoned pipeline only to transport gas produced from the Chapin-Smith field and that Hummon could not build additional pipelines. Hummon now appeals, asserting that the district court erred by enforcing and too narrowly construing the mediation agreement.

## SHOULD THIS COURT DISREGARD HUMMON'S FACTUAL ASSERTIONS?

We first address a procedural matter—the Landowners' argument that Hummon violated Kansas Supreme Court Rule 6.02(a)(4) (2017 Kan. S. Ct. R. 34) by not citing to the specific record supporting its factual assertions. Pursuant to Supreme Court Rule 6.02(a)(4), we may presume that a factual contention is not supported by the record if the appellant fails to cite to the record.

Specifically, the Landowners deny that the parties agreed to a maximum rate of injection into the well and assert that Hummon's contention to the contrary is not supported by the record. But the maximum rate of injection into the well is irrelevant to the district court's findings regarding the mediation agreement. Our consideration of whether Hummon and the Landowners agreed to a maximum rate of injection would serve no purpose. See *State v. Hilton*, 295 Kan. 845, 849, 286 P.3d 871 (2012); *State v. Montgomery*, 295 Kan. 837, 840-41, 286 P.3d 866 (2012).

5

An appellant's total failure to cite to the record violates Supreme Court Rule 6.02(a)(4). *Pittman v. Bliss*, No. 113,577, 2015 WL 9302708, at *3 (Kan. App. 2015) (unpublished opinion); *Yoakum v. McKune*, No. 110,255, 2014 WL 802513, at *1 (Kan App. 2014) (unpublished opinion). But the material facts which gave rise to this appeal are not in controversy, and Hummon's brief contains enough citations so that we can readily find key documents in the record. We find Hummon's brief sufficient to permit our judicial review.

IS THE MEDITATION AGREEMENT UNENFORCEABLE FOR LACK OF CONSIDERATION?

Hummon first contends that the mediation agreement was rendered unenforceable by lack of consideration. Hummon argues that it received no benefit from the mediation agreement because it already had the right to transport natural gas from the Chapin-Smith field.

An enforceable contract must be supported by consideration. *Puritan-Bennett Corp. v. Richter*, 8 Kan. App. 2d 311, 313, 657 P.2d 589 (1983). "The consideration necessary to establish a valid contract, express or implied-in-fact, must be an act, a forbearance, or a return promise, bargained for and given in exchange for the promise." 17A Am. Jur. 2d, Contracts § 113. Where one in good faith asserts a claim not obviously invalid, worthless, or frivolous, and which might be thought to be reasonably doubtful, the forbearance to prosecute such a claim will furnish a sufficient consideration for a promise of settlement and compromise of such claim. *Sutherland v. Sutherland*, 187 Kan. 599, 605, 358 P.2d 776 (1961). And when a contract is reduced to writing, the "existence of consideration is presumed . . . ." *State ex rel. Ludwick v. Bryant*, 237 Kan. 47, 50, 697 P.2d 858 (1985). When a contract is in writing and was signed by the parties, as here, lack of consideration is an affirmative defense that must be proved by substantial competent evidence. 237 Kan. at 50. Hummon thus bears this burden of proof.

The text of the mediation agreement illustrates that Hummon agreed to pay the Landowners $42,500 and to remove equipment from the well. In exchange, the Landowners agreed to dismiss the well lawsuit, to assign any rights they had in the Atlas pipeline to Hummon, and to grant Hummon an easement to access that pipeline for the stated purpose. The mediation agreement was written and signed by both parties.

That Hummon already had the right to transport gas across the Landowners' property is not determinative. Termination of the lawsuit in itself conferred a benefit to Hummon because Hummon would not have to incur the cost of further litigation or the risk of being ordered to pay damages to the Landowners. The text of the mediation agreement shows the existence of consideration because both Hummon and the Landowners made detrimental promises in exchange for a beneficial promise from the opposing party. See *Sutherland*, 187 Kan. at 605. Therefore, Hummon has not rebutted the presumption that consideration exists when a contract is written and signed by the parties.

## IS THE MEDIATION AGREEMENT UNENFORCEABLE BECAUSE A CONDITION PRECEDENT DID NOT OCCUR?

Hummon next contends that the mediation agreement was "expressly" conditioned on the Landowners' assignment of rights to the pipeline and that no assignment of rights occurred. Hummon thus argues that the mediation agreement is unenforceable because its condition precedent did not occur.

A condition precedent is an agreed event that must occur before the contract shall take effect.

> "A condition precedent is something that it is agreed must happen or be
> performed before a right can accrue to enforce the main contract. It is one without the

7

performance of which the contract, although in form executed and delivered by the parties, cannot be enforced. A condition precedent requires the performance of some act or the happening of some event after the terms of the contract, including the condition precedent, have been agreed on before the contract shall take effect. [Citation omitted.]" *Wallerius v. Hare*, 194 Kan. 408, 412, 399 P.2d 543 (1965).

Whether contractual performance is based on a condition precedent is a question of fact. *Cravotta v. Deggingers' Foundry, Inc.*, 42 Kan. App. 2d 700, 708, 215 P.3d 636 (2009).

We must again address a procedural issue. The Landowners assert that Hummon's condition precedent argument is not properly before this court because Hummon did not raise this issue before the district court and has not explained why this issue is properly before the appellate court.

Hummon admits that it did not use the term "condition precedent" before the district court. Hummon contends, however, that it "consistently argued that the efficacy of the Mediation Agreement was dependent upon agreement by the parties as to the terms of the [Landowners'] conveyance."

Having reviewed the record, we do not agree that Hummon's arguments before the district court can reasonably be construed as including a condition precedent theory. The mediation agreement itself does not contain any language which requires the occurrence of an event before Hummon's contractual obligations were due. Hummon did not argue that an agreed upon event had to occur before the Landowners could enforce their contract rights. Instead, Hummon's written response to the Landowners' motion to enforce the mediation agreement argued that the mediation agreement was incomplete and that additional terms needed to be included for a benefit to be conferred. Similarly, during oral argument on the Landowners' motion to enforce the mediation agreement, Hummon argued that the mediation agreement was incomplete. Nothing in the district court's order addressed the issue of a condition precedent yet Hummon did not object to

8

the district court's factual findings. The record thus does not reflect that Hummon raised the condition precedent issue before the district court.

Generally, issues not raised before the district court cannot be raised on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). Exceptions to the general rule include the following: (1) The newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the district court is right for the wrong reason. *State v. Spotts*, 288 Kan. 650, 652, 206 P.3d 510 (2009). If an issue raised on appeal was not raised below, the party must also explain why the issue is properly before the court. Supreme Court Rule 6.02(a)(5). That rule is to be strictly enforced. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015).

Hummon argues that the issue is properly before this court because the first two exceptions noted above apply. We disagree. Hummon contends that its condition precedent argument involves only a question of law arising on proved or admitted facts and is determinative of the case. But the issue of whether contractual performance is based on a condition precedent is a question of fact. *Cravotta*, 42 Kan. App. 2d at 708. Hummon's assertion that the condition precedent issue involves only a question of law is incorrect. The first exception to the prohibition on raising issues for the first time on appeal thus does not apply.

Nor does the second exception apply—that consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights. Hummon has not explained which fundamental right would be denied if this court did not consider the condition precedent issue. Instead, Hummon asserts that the issue of a condition precedent is "worthy of consideration" to prevent the enforcement of an "invalid contract." These conclusory contentions thus do not establish that the issue is properly

9

before this court for the first time on appeal. Accordingly, we do not reach the merits of Hummon's argument that failure of a condition precedent bars enforcement of the mediation agreement.

## IS THE MEDIATION AGREEMENT VOID BECAUSE ITS TERMS ARE TOO VAGUE AND INDEFINITE?

Hummon next argues that the mediation agreement is too vague and indefinite to be enforceable because material terms of the agreement were left undecided. Hummon asserts that the parties' inability to agree on the remaining essential terms evidences that no meeting of the minds occurred. Specifically, Hummon contends that the mediation agreement was indefinite because the agreement did not adequately define the scope of the easement or its rights in the pipeline.

A contract is unenforceable due to vagueness if the intent of the parties cannot be ascertained. *Mohr v. State Bank of Stanley*, 244 Kan. 555, 573, 770 P.2d 466 (1989). "Because a settlement agreement is a contract, what is required is that the parties reach agreement on all material terms. Once that is done, any nonmaterial discrepancies can be resolved by the court consistent with the parties' intent when they agreed upon the material terms." *O'Neill v. Herrington*, 49 Kan. App. 2d 896, 903, 317 P.3d 139 (2014). A material term is a "contractual provision dealing with a significant issue such as subject matter, price, payment, quantity, quality, duration, or the work to be done." Black's Law Dictionary 1698-99 (10th ed. 2014).

When Hummon and the Landowners participated in mediation, the most significant issue was settlement of the well dispute. The intent of the parties at the time they executed the mediation agreement was to settle the well dispute. The mediation agreement contained the material terms required to accomplish that purpose because it disposed of the well dispute and set forth what each party would receive. The exact width

or scope of the easement could properly be determined by the district court because that was not a material issue during mediation. Because the only terms that the district court had to resolve were the scope and extent of the access easement, we find the mediation agreement was not too vague or indefinite to be enforceable.

Hummon next asserts that the district court's construction of the mediation agreement was unreasonable because it "read the Mediation Agreement too literally and created a contract to resolve the dispute" between the parties. Hummon argues that it was denied the benefit of its bargain by the district court's construction of the mediation agreement. Hummon contends additional terms needed to be included in the mediation agreement. Specifically, Hummon wanted the right to lay an additional pipeline in the Landowners' property and to transport gas produced from locations other than the Chapin-Smith field. Hummon argues that these additional terms would not have prejudiced the Landowners. But whether additional terms would have prejudiced a party is not the governing test, as we set forth below.

The interpretation of a written instrument is a question of law subject to unlimited appellate review. *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014). "The primary rule in interpreting written contracts is to ascertain the intent of the parties. If the terms of the contract are clear, there is no room for rules of construction, and the intent of the parties is determined from the contract itself." *Liggatt v. Employers Mut. Casualty Co.*, 273 Kan. 915, 921, 46 P.3d 1120 (2002). "The intent of the parties and the meaning of a contract are to be determined from the plain, general, and common meaning of terms used." *Wood River Pipeline Co. v. Willbros Energy Services Co.*, 241 Kan. 580, 586, 738 P.2d 866 (1987). The law favors settlement of disputes. Absent bad faith or fraud, litigants who agree to settle a dispute

11

may not repudiate the settlement agreement. *In re Estate of Thompson*, 226 Kan. 437, 440, 601 P.2d 1105 (1979).

We are not persuaded that the district court misconstrued the agreement. The district court's interpretation of the mediation agreement is consistent with its plain language. The Landowners agreed to assign Hummon any interest owned in the Atlas steel pipeline located on described sections of land and to assign/grant an easement for Hummon to access the Atlas pipeline "for purposes of producing gas from the Chapin-Smith field." This language is specific and exclusive. We thus apply the familiar principle of statutory construction *expressio unius est exclusio alterius*, which means that the mention or inclusion of one thing implies the exclusion of another. *Degollado v. Gallegos*, 260 Kan. 169, 172, 917 P.2d 823 (1996); *State v. Luginbill*, 223 Kan. 15, 20, 574 P.2d 140 (1977). The parties stated one express purpose for which the Landowners granted an easement for access to the Atlas pipeline. We cannot reasonably construe that language to mean, instead, that the parties intended for this stated purpose to be merely one of many, as if the language had stated "for purposes including but not limited to . . . ."

The district court found that Hummon had an access easement to do anything that was reasonably necessary to safely operate the pipeline for purposes of producing gas from the Chapin-Smith field. The district court's findings are consistent with the plain terms of the mediation agreement. Nothing in the mediation agreement reasonably implies that Hummon would receive the right to lay an additional pipeline over the Landowners' land or to transport gas produced from locations other than the Chapin-Smith field.

Affirmed.

12